NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLEY M. DEL GRIPPO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civil Action No.:  20-20119<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

Before the Court is Plaintiff Lesley M. Del Grippo's ("Plaintiff") appeal seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act ("SSA" or the "Act").  This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.     BACKGROUND**

Plaintiff is a 52-year-old female who suffers from "seizure disorder, an anxiety disorder, and a sleep disorder." Tr.[1] at 15, 145.  She has a twelfth-grade education and previously worked as a data entry clerk. *Id.* at 18.  Plaintiff stopped working in 2007 allegedly because of her seizure disorder. *Id.* at 58, 628.

Records indicate that Plaintiff has a history of epileptic seizures, which she manages with

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 5.

1

daily medication. *Id.* at 40, 43–44. Plaintiff testified that her seizures in the last few years have not required hospitalization. *Id.* at 43. Specifically, when asked by the ALJ about the last time a seizure prompted the need to call an ambulance, Plaintiff testified it had not happened in the last two years, but "possibly" the year before that. *Id.* at 41. Accordingly, based on the record, the ALJ found that Plaintiff's seizure disorder has been stable during the relevant period. *Id.* at 16.

Aside from Plaintiff's seizure disorder, Plaintiff has not reported any physical impairments. *Id.* at 37–39. Plaintiff testified that she does not see any medical providers for any physical conditions. *Id.* at 39. Although Plaintiff's body mass index categorized her as obese, Plaintiff never mentioned obesity as one of her impairments during the administrative process. *Id.* at 15, 37, 275. Plaintiff requires no assistance with activities of daily living. *Id.* at 15. With her application for SSI, Plaintiff completed function reports, in which she reported that she uses public transportation, attends group therapy, performs household chores, prepares meals, shops at stores, and spends time with her boyfriend. *Id.* at 14.

With regard to Plaintiff's mental health disorders, records indicate that Plaintiff has a history of depression and anxiety. *Id.* at 16. Plaintiff testified that as a result of her depression and anxiety, Plaintiff "[doesn't] like being around people." *Id.* at 47. Indeed, Plaintiff has reported that she only socializes with her boyfriend and rarely leaves her home except to attend medical appointments. *Id.* at 17, 54. Plaintiff receives treatment for her mental health disorders, and she has reported that medications have improved her mood. *Id.* at 17. Mental status examinations conducted during the relevant period were consistently normal apart from Plaintiff's complaints of a depressed and/or anxious mood. *Id.* at 17, 657, 661, 667, 670.

Finally, the record indicates that Plaintiff has a history of heroin abuse. *Id.* at 13. Plaintiff has reported that she began abusing heroin in or around 2000, with on and off abuse until about

2016. *Id.* at 51–52, 627. Plaintiff testified that she attended treatment at a methadone maintenance clinic for roughly one year and has not used heroin since. *Id.* 51–52.

On September 25, 2017, Plaintiff applied for SSI, alleging disability beginning February 1, 2012.[2] *Id.* at 10. Plaintiff's claim was denied initially on February 22, 2018, and upon reconsideration on August 28, 2018. *Id.* Plaintiff thereafter requested a hearing, which was held before the ALJ on October 2, 2019. *Id.* Following the hearing, on December 20, 2019, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 10–20. Plaintiff requested review of the decision, and the Appeals Council denied the request on October 21, 2020. *Id.* at 1–6. On December 22, 2020, Plaintiff initiated this action. ECF No. 1.

### III.  LEGAL STANDARD

#### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed,

---

[2] Although Plaintiff alleges an onset date of February 1, 2012, the relevant period for her disability claim began on September 25, 2017, the date she filed her application for SSI. *See* 20 C.F.R. §§ 416.305, 416.335; *see also Wilson v. Astrue*, 2010 WL 1838008, *1 n.1 (W.D. Pa. May 5, 2010) (explaining that the relevant period for an SSI claim begins at the time of the application).

substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an

4

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the plaintiff has an impairment that limits her ability to work. *Id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one through four, upon which the burden shifts to the Commissioner at step five. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

### IV. DISCUSSION

### A. Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since September 25, 2017, the application date. Tr. at 12. At step two, the ALJ found that Plaintiff had the following severe impairments: epilepsy, anxiety and obsessive compulsive disorders, major depressive disorder, and personality and impulse control disorder. *Id.* The ALJ also concluded that Plaintiff's obesity was not a severe impairment. *Id.* At step three, the ALJ determined that Plaintiff's impairments, whether considered alone or in combination, did not meet or medically equal the severity of one of the impairments in the Listings. *Id.* at 13. Because the ALJ found that Plaintiff's impairments did not meet such severity, the ALJ then determined Plaintiff's RFC. *Id.* at 15. Based on all the evidence in the record, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but was compromised by certain nonexertional limitations. *Id.* Specifically, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that [Plantiff] has the residual functional capacity to perform a full range of work at all exertional levels[,] but with the following non-exertional limitations: [she] cannot climb ladders, ropes or scaffolds or work around hazards, including moving mechanical parts or at unprotected heights. [Plaintiff] can understand and execute simple and routine tasks where production is measured no earlier than the end of the work day; have occasional contact with coworkers and supervisors; have incidental contact with the public but not with tasks that involve direct customer service; and make simple decisions and adapt to occasional changes in essential work tasks.

*Id.*

At step four, in light of her RFC, the ALJ found that Plaintiff was unable to perform her past relevant work. *Id.* at 18. At step five, however, the ALJ determined, based on the vocational expert's testimony at the administrative hearing on October 2, 2019, that there were jobs in significant numbers in the national economy that Plaintiff could perform, given her age, education,

work experience, and RFC.[3] *Id.* at 19. Therefore, the ALJ concluded that Plaintiff was not disabled as defined in the SSA. *Id.* at 25.

### B. Plaintiff's Arguments on Appeal

Plaintiff's arguments on the instant appeal concern the ALJ's determination that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various nonexertional limitations. ECF No. 12 ("Pl. Br.") at 4. First, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's obesity in assessing her RFC. *Id.* at 10–14. Second, Plaintiff argues that substantial evidence does not support the ALJ's findings with respect to Plaintiff's exertional abilities and nonexertional limitations. *Id.* at 14–15. Third, Plaintiff argues that the ALJ improperly weighed the medical opinions in determining Plaintiff's RFC. *Id.* at 15–19. The Court will consider each argument in turn.

#### 1. Consideration of Plaintiff's Obesity

First, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's obesity in assessing her RFC. *Id.* at 10–14. Plaintiff contends that the ALJ improperly "discarded" Plaintiff's obesity when she found it to be a nonsevere impairment at step two by failing to consider the impairment at any stage of the analysis thereafter. *Id.* at 11.

Step two of the sequential evaluation requires the ALJ to determine whether the plaintiff's claimed impairment and/or combination of impairments possesses the requisite severity. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Pursuant to SSR 19-2p, obesity may be classified as a severe impairment "[i]f the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." SSR 19-2p,

---

[3] Specifically, based on testimony from a vocational expert, the ALJ determined that Plaintiff could work as a mail sorter, microfilm mounter, and assembler of small parts. Tr. at 19. All of these occupations are characterized as light in terms of exertion. *Id.*

2019 WL 2374244, at *3 (May 20, 2019). "No specific weight or BMI establishes obesity as a 'severe' or 'not severe' impairment." *Id.* Rather, the determination of whether obesity is a severe impairment requires "an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe." *Id.*

Here, at step two, the ALJ noted that Plaintiff's body mass index categorized her as obese, and she indicated that she considered Plaintiff's obesity in accordance with SSR 19-2p, which requires an ALJ to consider a claimant's obesity, as well as the combined effects of a claimant's obesity with her other impairments, in deciding whether the impairment is severe. Tr. at 12. The ALJ concluded that because Plaintiff's obesity did not limit her physical or mental ability to perform basic work activities, Plaintiff's obesity was not a severe impairment. *Id.* (noting that there was no evidence of "clinical signs attributing obesity as affecting a weight-bearing joint, causing fatigue, or limiting on exerting strength, or performing postural functions or routine movement and necessary physical activity within the work environment . . . The evidence does not even reveal that obesity affects [Plaintiff]'s social functioning."). Accordingly, the ALJ's decision to find Plaintiff's obesity to be non-severe at step two is based on substantial evidence. *See Desorte v. Comm'r of Soc. Sec.*, No. 17-11407, 2019 WL 1238827, at *4 (D.N.J. Mar. 18, 2019) (finding substantial evidence supported ALJ's determination that plaintiff's obesity was non-severe where there was no evidence that obesity limited plaintiff's mental or physical ability to perform work related activities).

In arguing that the ALJ failed to properly evaluate the severity of her obesity, Plaintiff cites treatment records from 2014 to argue that her obesity caused "degenerative arthritis, back pain, and pain in the joints at multiple sites" with "breakthrough pain aggravated by walking and movement." Pl. Br. at 11 (citing Tr. at 590, 594–96). As an initial matter, as the Commissioner

8

argues, these treatment records predate the relevant period in this case by three years, so they are not necessarily probative of Plaintiff's limitations during the relevant period. ECF No. 13 at 12; *see e.g.*, *Wygant v. Colvin*, No. 15-1422, 2016 WL 7384166, at *1 (W.D. Pa. Dec. 21, 2016) (rejecting plaintiff's argument that the ALJ was required to consider a report which predated the relevant period by about two years). More importantly, however, these treatment records do not attribute Plaintiff's arthritis and back pain to obesity. Tr. at 590–96. And finally, as the ALJ found when considering the evidence from the relevant period, beginning on September 25, 2017, Plaintiff's records not only fail to document any obesity-related limitations, they also no longer document any diagnosis of arthritis or complaints of back pain. *Id.* at 638–39, 643. Therefore, the ALJ's determination that there was no evidence to support any physical limitations stemming from Plaintiff's obesity is supported by substantial evidence.

Plaintiff also argues that the ALJ's finding that Plaintiff's obesity did not affect her social functioning is not supported by substantial evidence. Pl. Br. at 11. Specifically, Plaintiff contends that the ALJ's finding at step two that Plaintiff's obesity did not affect her social functioning (Tr. at 12) is inconsistent with the ALJ's finding at step three that Plaintiff had moderate limitations in interacting with others (*id.* at 14). However, these findings are not inconsistent. In determining that Plaintiff had moderate limitations in interacting with others, the ALJ cited Plaintiff's function reports, treatment records, and examination findings. *Id.* at 14 (citing *id.* at 295–302, 331–33, 334–41, 626–30). None of these records mention Plaintiff's obesity, let alone attribute Plaintiff's social limitations to obesity. Instead, the record indicates that Plaintiff's social limitations result from her other impairments, namely her mental health and seizure disorders. *See, e.g.*, *id.* at 47; 627. Accordingly, the ALJ did not err in finding that Plaintiff's obesity did not affect her social functioning.

9

Next, Plaintiff argues that the ALJ erred by failing to explicitly address Plaintiff's obesity when assessing her RFC. Pl. Br. at 11–13. However, Plaintiff has not pointed to any evidence in the record indicating that she required additional RFC limitations due to her obesity. Mere speculation that obesity combined with other impairments necessitates more significant RFC limitations is insufficient to overturn the ALJ's analysis. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (a "generalized response" that obesity would affect another impairment is insufficient to warrant remand); *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (claimant must establish not just that "obesity *can* impair one's ability to perform basic work activities," but must also "specify[] *how* her obesity . . . affected her ability to perform basic work activities") (emphasis in original).

Furthermore, *Rodriguez v. Comm'r of Soc. Sec.*, 2019 WL 397983, at *2 (D.N.J. Jan. 30, 2019), which Plaintiff relies upon to argue that remand is required when the ALJ fails to consider obesity in determining RFC, is inapposite. In finding that remand was warranted, the *Rodriguez* court relied on *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504–06 (3d Cir. 2009), in which the Third Circuit determined that an ALJ is required to evaluate the effect of obesity on the claimant's RFC when a claimant asserts, and the ALJ specifically determines, that a claimant's obesity constitutes a severe impairment. *See id.* at 503. Here, by contrast, the ALJ did not find that Plaintiff's obesity qualified as a severe impairment at step two, as explained above. Moreover, Plaintiff never claimed obesity as an impairment in her application for benefits (Tr. at 15, 275) nor did she mention obesity at any point in the administrative process (*id.* at 37, 626–27). To the contrary, throughout the administrative process, Plaintiff only alleged the following impairments: a seizure disorder, an anxiety disorder, and a sleep disorder. *Id.* at 15, 37, 275. Thus, Plaintiff's reliance on *Rodriguez* is misplaced. *See Rickabaugh v. Astrue*, No. 08-228, 2010 WL 1142041

(W.D. Pa. Mar. 24, 2010) (finding ALJ was not required to analyze obesity in deciding RFC because claimant did not assert obesity and the ALJ did not expressly find that claimant's obesity was a severe impairment). Accordingly, the Court concludes that the ALJ's consideration of Plaintiff's obesity is based on substantial evidence.

### 2. Formulation of Plaintiff's RFC

Second, Plaintiff challenges the ALJ's determination that Plaintiff had the RFC to perform a full range of work at all exertional levels subject only to various nonexertional limitations. Pl. Br. at 14–15. Specifically, Plaintiff argues that the ALJ did not provide a sufficient evidentiary explanation for Plaintiff's ability to perform a full range of work at all exertional levels. *Id.* at 9–10. Plaintiff further argues that the ALJ erred in failing to assign appropriate nonexertional limitations relating to Plaintiff's mental health and seizure disorders. *Id.* at 14–15.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361 (citations omitted). The ALJ reviews "all of the relevant medical and other evidence" in the record and resolves conflicts in the evidence in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3). Further, an ALJ's RFC determination must "be accompanied by a clear and satisfactory explication of the basis on which it rests" to enable judicial review. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Here, as noted above, the ALJ found that Plaintiff had the RFC to perform:

[A] full range of work at all exertional levels[,] but with the following non-exertional limitations: [she] cannot climb ladders, ropes or scaffolds or work around hazards, including moving mechanical parts or at unprotected heights. [Plaintiff] can understand and execute simple and routine tasks where production is measured no earlier than the end of the work day; have occasional contact with coworkers and supervisors; have incidental

      contact with the public but not with tasks that involve direct customer service; and make simple decisions and adapt to occasional changes in essential work tasks.

Tr. at 15.

In determining Plaintiff's RFC, the ALJ conducted a thorough review of the relevant evidence of record, including Plaintiff's testimony, diagnostic testing, objective examination findings, examination and psychiatric reports, treatment notes from Plaintiff's medical providers, and the findings by the state agency medical consultants. *Id.* at 15–18. After reviewing the evidence, the ALJ concluded that Plaintiff had no exertional limitations because the record did not support any. *Id.* at 15. As the ALJ explained, physical examinations demonstrated that Plaintiff had normal muscle strength, muscle tone, coordination, gait, and sensation. *Id.* at 16. The ALJ further supported her finding by reference to Plaintiff's continued ability to perform daily activities despite her impairments. *Id.* at 17 (citing *id.* at 626–30) (noting Plaintiff's self-reported daily activities which reveal that during the relevant period, Plaintiff used public transportation, performed household chores, prepared meals, and shopped at stores). Moreover, Plaintiff cites no medical evidence to support the presence of any exertional limitations during the relevant period. *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95–96 (3d Cir. 2004) (citation omitted) (finding that without medical evidence on behalf of a claimant describing his or her work-related functional limitations, the claimant "cannot establish disability under the Social Security Act"). Therefore, Plaintiff's bare assertion that the ALJ erred by finding that Plaintiff had no exertional limitations— without reference to specific medical evidence—fails. Accordingly, substantial evidence supports the ALJ's conclusion with respect to Plaintiff's exertional abilities.

Next, Plaintiff argues that the ALJ erred in failing to assign appropriate nonexertional limitations relating to Plaintiff's mental health and seizure disorders. Pl. Br. at 14. However, as explained below, the ALJ thoroughly reviewed the record evidence relating to Plaintiff's mental

12

health and seizure disorders and explained her findings.

With respect to Plaintiff's epilepsy, the ALJ acknowledged that Plaintiff reported having a history of epileptic seizures. Tr. at 16. However, after reviewing the evidence, the ALJ found that "[t]hroughout the years of treatment, [Plaintiff]'s seizure disorder has been stable[.]" *Id.* As the ALJ explained, Plaintiff testified that she had not suffered a seizure episode where she was taken to the hospital in the last two years. *Id.* The ALJ further found that Plaintiff's physical and neurological examination findings were essentially normal. *Id.* Moreover, the ALJ noted that the record did not support Plaintiff's claim that she reported her alleged seizure episodes to her doctors. *Id.* Indeed, aside from her own statements, Plaintiff has not pointed to any evidence that her seizure disorder caused any work-related limitations beyond those found by the ALJ. *See Lane*, 100 F. App'x at 95–96. Thus, the ALJ adequately considered Plaintiff's seizure disorder in deciding her RFC.

The ALJ also properly considered Plaintiff's mental health disorders in assessing her RFC. The ALJ summarized Plaintiff's treatment records, which indicated that Plaintiff suffered from anxiety, major depressive disorder, and personality and impulse control disorder. Tr. at 16. The ALJ also considered Plaintiff's testimony that she suffered from crying spells, auditory hallucinations, insomnia, appetite disturbance, poor memory and concentration, and mood swings. *Id.* However, after reviewing the evidence, the ALJ concluded that the record did not support work limitations apart from those noted by the ALJ. *Id.* at 16–17. For instance, the ALJ found that although treatment notes indicated that Plaintiff had an anxious and depressed mood, her mental status examinations were otherwise normal. *Id.* at 17. The ALJ further found that the record did not contain any evidence of inpatient hospitalizations for psychiatric issues or emergency treatment for anxiety or depression. *Id.* The ALJ also noted that Plaintiff has reported that

13

medications have improved her mood. *Id.* Thus, the ALJ sufficiently considered Plaintiff's mental health disorders in deciding her RFC.

Furthermore, the ALJ's RFC formulation is consistent with the medical opinions of record. Notably, as the ALJ stated, of the medical opinions in the record, none support a more restrictive RFC formulation than that articulated by the ALJ. Tr. at 18; *see, e.g.*, *Lane*, 100 F. App'x at 95–96 (noting that a lack of supporting medical opinion evidence from treating sources can be strong evidence that the claimant is not disabled). For example, the ALJ partially relied on the opinion of the state agency medical consultants to the extent they determined that Plaintiff had no exertional limitations, but should avoid all hazards and never climb ladders, ropes, or scaffolds. Tr. at 18. The state agency medical consultants further reported in relevant part that Plaintiff was limited to performing simple work-related activities on a sustained basis. *Id.* As to mental limitations, however, the ALJ determined that the overall record supported further limitations than those proposed by the state medical consultants, which the ALJ ultimately reflected in the RFC formulation. *Id.* (finding that "the overall evidence establishes greater mental functional limitations"). Thus, "the ALJ detailed the record evidence in a narrative discussion throughout several single-spaced pages with specific citations to the record, explicitly considered Plaintiff's functional limitations, and crafted an RFC that reflected those limitations." *Nieves v. Saul*, No. 18-10748, 2021 WL 941923, at *11 (D.N.J. Mar. 12, 2021). Accordingly, the Court concludes that the ALJ's RFC determination, which relied on objective record evidence, medical opinions, and hearing testimony, is supported by substantial evidence.[4]

---

[4] In her motion, Plaintiff suggests that the ALJ's RFC determination was based exclusively on Plaintiff's daily activities. Pl. Br. at 19. This argument lacks merit. As explained herein, the ALJ properly considered "the entire record" in formulating Plaintiff's RFC. Tr. at 15.

### 3. Evaluation of the Medical Opinions

Finally, Plaintiff argues that the ALJ ignored the medical opinions and reached its decision based on its own improper lay opinion regarding the medical evidence. Pl. Br. at 15–19. However, as explained below, the ALJ did not ignore the medical opinions. Rather, the ALJ thoroughly considered the medical opinions and explained how persuasive she found each opinion to be in the context of the overall record evidence. Tr. at 17–18. Upon consideration of the entire record, the ALJ afforded partial weight to these various opinions and adequately explained her reasoning. *Id.* That the ALJ did not fully adopt one of the medical opinions does not, as Plaintiff suggests, render her decision improper or mere lay opinion. *See Notz v. Kijakazi*, No. 20-1818, 2022 WL 956277, at *17–18 (M.D. Pa. Feb. 25, 2022), report and recommendation adopted, No. 20-1818, 2022 WL 949981 (M.D. Pa. Mar. 29, 2022) (rejecting plaintiff's argument that the ALJ erred by failing to give no more than partial weight to any medical opinion, noting that "an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions."). Thus, the Court finds that the ALJ's consideration of the medical opinions is supported by substantial evidence and addresses each medical opinion in turn.

Beginning with Dr. Gorman, a treating psychiatrist, Plaintiff argues that the ALJ improperly rejected Dr. Gorman's opinion that Plaintiff had mental limitations in understanding, sustaining concentration, social interaction, and adaption. Pl. Br. at 17. However, the ALJ did not reject Dr. Gorman's opinion. *See* Tr. at 17. Rather, the ALJ assigned partial weight to his opinion because it "has an insufficient explanation as to duration and frequency." *Id.* Although Dr. Gorman checked off boxes indicating that Plaintiff had mental limitations in understanding, sustaining concentration, social interaction, and adaptation, Dr. Gorman neither specified the extent or degree of Plaintiff's limitations nor provided a sufficient explanation to support his various conclusions.

15

*Id.* at 634. The Third Circuit has explained that form reports which require physicians only to check boxes or fill in a blank are considered "weak evidence at best," especially when such reports are not accompanied by written explanations. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Thus, substantial evidence supports the ALJ's decision to afford partial weight to Dr. Gorman's opinion. *See Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of plaintiff's treating physician's opinion because it was provided on a check-box form and no reasons were given in support of the doctor's conclusion on that form).

Turning to Dr. Gelber, an examining psychiatrist, Plaintiff argues that the ALJ ignored most of the findings in Dr. Gelber's consultative examination report. Pl. Br. at 17. However, in the decision, the ALJ recites most of the very findings in Dr. Gelber's report that Plaintiff claims were ignored (Tr. at 16–17) (citing *id.* at 626–30)), which indicates that the ALJ considered Dr. Gelber's report in assessing Plaintiff's RFC. Moreover, the Court notes that Dr. Gelber's report does not propose any specific functional limitations nor provide an opinion on what Plaintiff can still do despite her impairments. *See id.* at 626–30. Indeed, Plaintiff does not specify how Dr. Gelber's report supports greater RFC limitations. Nonetheless, to the extent that Dr. Gelber did provide an opinion on Plaintiff's functional abilities, the ALJ articulated a viable basis for discounting it: Dr. Gelber only examined Plaintiff once and did not have the opportunity to review all of her medical records. *Id.* at 18; *see Wygant*, 2016 WL 7384166, at *1 (finding that the ALJ did not err in discounting a medical opinion where the ALJ noted that the doctor was a one-time consultative examiner who provided only a snapshot of the plaintiff's functioning). Accordingly, substantial evidence supports the ALJ's consideration of Dr. Gorman's opinion.

Finally, Plaintiff argues that the ALJ improperly rejected the opinion of the state agency medical consultants. Pl. Br. at 18. However, as was the case with Dr. Gorman's opinion, the ALJ

did not *reject* the state agency medical consultants' opinion. *See* Tr. at 18. Rather, as explained above, the ALJ partially relied on their opinion in assessing Plaintiff's RFC. *Id.* In fact, as also noted above, since the ALJ found that the overall record supported greater mental limitations than the state agency medical consultants proposed, the ALJ ultimately gave Plaintiff the benefit of greater mental limitations. *Id.* Thus, the ALJ adequately considered the opinions of the state agency medical consultants in formulating Plaintiff's RFC. *See Chandler*, 667 F.3d at 361 (finding that the ALJ did not err when it incorporated some of the state agency consultant's opinion into the plaintiff's RFC, while also adding restrictions the state agency consultant did not deem necessary). Accordingly, the Court concludes that the ALJ's consideration of the medical opinions is based on substantial evidence.

## V. CONCLUSION

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** July 13, 2022

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**